Filed 6/11/24

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KEVIN LYTKOWSKI,<br><br>    Defendant and Appellant. | APP-23-008729<br>(Super. Ct. No. 2529479)<br><br><br><br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of San Francisco County, Sharon M. Reardon, Judge. Reversed.

Robert N. Treiman, under appointment by the Appellate Division of the Superior Court of San Francisco County, for Defendant and Appellant.

Brooke Jenkins, District Attorney, and Robert Lopez, Assistant District Attorney, for Plaintiff and Respondent.

_____

Appellant was convicted by a jury of reckless driving. On appeal he argues, *inter alia*, that his conviction must be reversed because insufficient evidence supports the jury's factual finding that he drove recklessly on a highway or offstreet parking facility, as defined by the Vehicle Code. After considering the record, arguments, and applicable law, the judgment is REVERSED.

## I. FACTS AND PROCEDURAL HISTORY

On September 14, 2021, at about 5:20 a.m., John Morris, Jr., a security guard at the Olympic Club in San Francisco, was sitting in his parked car at the entrance gate to the club when he saw a vehicle arrive "off of Skyline Boulevard into the driveway of the club." Skyline Boulevard is a highway. Morris saw the vehicle, a burgundy Cadillac Escalade, arrive "very fast . . . with excessive speed . . . tires screeching," and driving on the wrong side of the road. As the Cadillac approached Morris and nearly collided with his car, it "moved right to the side, hit [a] planter . . . careened off of that planter, and then hit [a] retaining wall . . . behind [the] gate, bounced over to the other side" of the driveway, and hit another retaining wall, before rolling down the driveway. A club security camera recorded the Cadillac crashing into the retaining walls. The Cadillac crashed into a tree. Morris called 911.

San Francisco Police Department Officer Nathan Rapolla arrived, and saw the Cadillac that had apparently collided with a tree. Officer Rapolla got out of his patrol car, and saw a man in the Cadillac next to the tree. Officer Rapolla testified that the man in the car appeared to be "in and out of consciousness." The man, later identified as appellant Kevin Lytkowski, was yelling at "Hammer," and he claimed that he was an undercover officer. "Fuck you, pigs," appellant said. Appellant attempted to spit at and bite the officers. Officer Rapolla saw appellant bite personnel from the San Francisco Fire Department.

San Francisco Police Department Officer Zakariya Ali, who also arrived at the Olympic Club, identified appellant in court as the man he saw in the Cadillac on September 14, 2021.

Appellant told Officer Ali that he "was coming from hell." When Officer Ali asked appellant to clarify where he was coming from, appellant said that he was coming from "The Avenues." Appellant said that he was going to "hell." Appellant said that he drank three cans of beer. Officer Ali testified that he did not perform field sobriety tests on appellant because it was "impossible due to . . . his injuries." Appellant suffered from head trauma, internal bleeding, and broken bones. Appellant was taken to the San Francisco General Hospital, where he was treated for his injuries and a nurse drew blood from his arm.

3

Sue Pearring, a forensic toxicologist at the Office of the Chief Medical Examiner, analyzed a vial which contained appellant's blood, and found that it contained 1,112 nanograms per milliliter of methamphetamine, and 5.5 nanograms per milliliter of tetrahydrocannabinol (THC). Pearring testified that it would be "hard to say" whether that concentration of methamphetamine in someone's blood would impair their ability to drive, but that "[g]iven the police report and the narrative here describing the driving, the high speed, as well as the collision, and the . . . disregard for the obstacles in the roadway and the barriers . . . these things are consistent with methamphetamine and driving."

On February 16, 2022, appellant was charged by misdemeanor complaint with driving under the influence of methamphetamine (Veh. Code, § 23152, subd. (f)). On May 5, 2022, the trial court granted the prosecutor's motion to amend the complaint, adding three charges: reckless driving (Veh. Code, § 23103, subd. (a), count 2), assault upon a peace officer (Pen. Code, § 241, subd. (c), count 3), and battery upon a peace officer (Pen. Code, § 243, subd. (b), count 4). On June 8, 2022, the trial court granted the prosecutor's motion to dismiss counts 3 and 4 "in furtherance of justice." (See Pen. Code, § 1385, subd. (a).)

On June 27, 2022, a jury convicted appellant of reckless driving. The jury informed the trial court that they were

hopelessly deadlocked 11-1 on the other count, driving under the influence of methamphetamine, so the trial court declared a mistrial on that count. After declaring a mistrial, the jury foreperson informed the trial court that they were hopelessly deadlocked 11-1 in favor of guilt.

On April 18, 2023, the trial court suspended imposition of sentence, and placed appellant on probation for one year, with conditions that he not drive with drugs or alcohol in his system, participate in 20 days of drug counseling, and complete a safe driving course. The trial court imposed various fines and fees, but stayed them, finding that appellant lacked the ability to pay them. (See *People v. Dueñas* (2019) 30 Cal.App.5th 1157.)

Appellant timely filed a notice of appeal.

## II.    DISCUSSION

Appellant argues that there was not substantial evidence that he recklessly drove on a public highway or in an offstreet parking facility as that term is defined by statute, so his conviction must be reversed. We agree.

"In evaluating a claim regarding the sufficiency of the evidence, we review the record 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence — that is, evidence which is reasonable, credible, and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People*

*v. Westerfield* (2019) 6 Cal.5th 632, 713.) We also presume in support of the judgment the existence of every fact the trier of fact could reasonably infer from the evidence. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

The Legislature has defined reckless driving in two ways. First, "[a] person who drives a vehicle *upon a highway* in willful or wanton disregard for the safety of persons or property is guilty of reckless driving." (Veh. Code, § 23103, subd. (a), italics added.) Second, "[a] person who drives a vehicle *in an offstreet parking facility*, as defined in subdivision (c) of Section 12500, in willful or wanton disregard for the safety of persons or property is guilty of reckless driving." (Veh. Code, § 23103, subd. (b), italics added.) "'[O]ffstreet parking facility' means any offstreet facility held open for use by the public for parking vehicles and includes any publicly owned facilities for offstreet parking, and privately owned facilities for offstreet parking where no fee is charged for the privilege to park and which are held open for the common public use of retail customers." (Veh. Code, § 12500, subd. (c).)[1]

There was not substantial evidence that appellant drove recklessly on a highway. The evidence at trial was that appellant

---

[1] Although appellant was charged with violating Vehicle Code section 23103, subdivision (a), and the jury's verdict form states that they found him guilty of violating subdivision (a), the trial court instructed the jury that they could find him guilty if they found he violated either subdivision (a) or subdivision (b).

drove on Skyline Boulevard, a highway, and turned onto a road leading to the Olympic Club's entrance gate. There was no evidence that appellant had been driving in willful or wanton disregard for the safety of persons or property while he was on Skyline. Respondent conceded that there was no direct evidence regarding appellant's driving on Skyline, but argued that there was circumstantial evidence of appellant's reckless driving there, based on his quick entry to the club's parking lot, screeching tires, and prompt collisions with retaining walls. While a juror might speculate that appellant had been driving in a similar fashion on Skyline, facts must be supported by substantial evidence, not speculation.

Although there was overwhelming evidence that appellant drove recklessly on the private roads and parking lots of the Olympic Club, there was not substantial evidence that he drove recklessly in an offstreet parking facility, as defined by the Vehicle Code. (Veh. Code, § 12500, subd. (c).) There was no evidence that the club's parking lots were held open for use by the public for parking vehicles. At the entrance to the club, there is a guard house, and a gate that can close across the road. A security guard at the entrance to the club stops all cars attempting to enter, and refuses entrance if they are not members or guests. A photograph admitted into evidence showed a sign at the entrance to the club: "MEMBERS & GUESTS

7

ONLY." A reasonable inference from the evidence at trial is that the club's parking lot was limited to members and guests of the club, which is not sufficient to be "open for use by the public" within the meaning of Vehicle Code section 12500, subdivision (c).

At oral argument, counsel for appellant argued that reckless driving on a private road is not a crime in California. Counsel cited no authority for his argument, which is inconsistent with provisions of the Vehicle Code allowing cities and counties to extend application of the Vehicle Code to private roads and privately owned and maintained off-street parking facilities.[2]

Reckless driving on a private road that is not generally held open for use of the public for purposes of vehicular travel may be a crime in California. (Veh. Code, § 21107.7, subd. (a) ["Any city or county may, by ordinance or resolution, find and declare that there are privately owned and maintained roads as described in the ordinance or resolution within the city or county that are not generally held open for use of the public for purposes

---

[2] See, e.g., Veh. Code, § 21107; Veh. Code, § 21107.5 (private roads open for public use); Veh. Code, § 21107.6 (private roads to commercial establishments); Veh. Code, § 21107.7 (private roads not open to public use); Veh. Code, § 21107.9 (private roads within mobile home parks and manufactured housing communities); Veh. Code, § 21107.8 (privately owned and maintained offstreet parking facilities).

of vehicular travel but, by reason of their proximity to or connection with highways, the interests of any residents residing along the roads and the motoring public will best be served by application of the provisions of this code to those roads."].)

While San Francisco may have enacted an ordinance or resolution extending the application of the Vehicle Code to private roads,[3] there was no evidence that "appropriate signs are erected at the entrance to the road of the size, shape, and color as to be readily legible during daylight hours from a distance of 100 feet, to the effect that the road is subject to the provisions of [the Vehicle] code." (Veh. Code, § 21107.7, subd. (a).)

Since there was not substantial evidence that appellant recklessly drove on a public highway or in an offstreet parking facility, and there was no evidence that signs to the effect that the Olympic Club's private roads were subject to the provisions of the Vehicle Code, appellant's conviction must be reversed.

---

[3] At trial, the parties did not discuss whether an ordinance existed, nor did they discuss whether the Vehicle Code applies to the club's private roads and parking lots.

9

## III.   DISPOSITION

The judgment is reversed.

DATE:  June 11, 2024

MURPHY, J.

We concur:

FLEMING, P.J.

GORDON, J.

*People v. Kevin Lytkowski* (APP-23-008729)

10